**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HAMDI ABDEL MUNIM ABU KHALAF, et al.,<br>Plaintiffs,<br>v.<br>BERKSHIRE HATHAWAY ASSURANCE CORPORATION, et al.,<br>Defendants. | Case No.: 25-cv-02246-H-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AMGUARD INSURANCE COMPANY'S MOTION FOR A PROTECTIVE ORDER PROHIBITING DEPOSITIONS**<br><br>**[ECF No. 38]** |

Before the Court is Defendant AmGuard Insurance Company's ("Defendant AmGUARD") Motion for a Protective Order Prohibiting Depositions ("Motion"). (ECF No. 38.) Plaintiffs Hamdi Abdel Munim Abu Khalaf and Aladdin Clairemont & MKT, Inc., doing business as Aladdin's Cafe ("Plaintiff Aladdin's Cafe") (collectively, "Plaintiffs"), oppose the Motion. (ECF No. 39.) For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part the Motion.

///

# I. BACKGROUND

## A. Factual Background

Plaintiff Aladdin's Cafe was insured under a commercial insurance policy issued by Defendant AmGUARD that provided coverage for property damage and lost business income, with a policy period from October 1, 2022, to October 1, 2023. (ECF No. 1-4 at 5, ¶ 19.) In February 2023, Plaintiff Aladdin's Cafe sustained water damage during a period of heavy rainfall. (*Id.* at 5, ¶ 26.) Plaintiffs filed a claim (the "February Claim" or "February Loss") with Defendants AmGUARD, Berkshire Hathaway Assurance Corporation, Berkshire Hathaway Guard Insurance Companies, and Berkshire Hathaway Inc. (collectively, "Defendants"), and the necessary repairs were completed in March 2023. (*Id.* at 5–6, ¶¶ 28–32.)

In August 2023, Plaintiff Aladdin's Cafe sustained water damage during Tropical Storm Hilary. (*Id.* at 6, ¶¶ 35–36.) Plaintiffs submitted a claim for damage and loss of income due to the tropical storm (the "August Claim" or "August Loss"), which was denied in January 2024. (*Id.* at 7–8, ¶¶ 38, 49.) According to Plaintiffs, Defendant AmGUARD initially "provided no explanation" for the denial of the August Claim. (*Id.* at 8, ¶ 51.)

Presently, Defendant AmGUARD contends that the "interior damage limitation" contained in Plaintiffs' insurance policy precluded coverage of the August Claim. (ECF No. 38 at 3–4.) Pursuant to this limitation, Defendant AmGUARD only covers loss or damage to the interior of a building or structure caused by or resulting from rain if the building or structure first sustains damage by a covered cause of loss to its roof or walls through which the rain enters. (*Id.* at 4.) Defendant AmGUARD asserts that an inspection of Plaintiff Aladdin's Cafe revealed that the claimed water damage resulted from deteriorated sealants in or about the roof, deteriorated underlayment, and water that had accumulated on the roof and overflowed a roof vent, and that "there was no damage to the roof or exterior of the restaurant that allowed rainwater to enter the building and damage its interior elements." (*Id.* at 4–5.)

///

**B. Procedural Background**

In July 2025, Plaintiffs filed suit against Defendants in the San Diego County Superior Court for breach of contract and breach of the covenant of good faith and fair dealing, alleging that the August Claim was wrongfully denied. (*Id.* at 4, 6, ¶¶ 18, 35–36.) The following month, Defendants secured removal to federal court. (ECF No. 2.) Plaintiffs thereafter filed a motion to remand the matter to state court, which was denied. (ECF No. 10.)

In December 2025, the Court issued a scheduling order regulating discovery. (ECF No. 19.) Plaintiffs began deposing Defendant AmGUARD's employees in mid-May. (ECF No. 38 at 5.) On May 15, 2026, Plaintiffs deposed Scotty Shaver, the primary adjuster assigned to the August Claim. (*Id.* at 3.) Between May 2026 and June 2026, Plaintiffs deposed Darren Heiser, Mr. Shaver's supervisor and author of the August Claim denial letter; Sean Timmons, an independent adjuster who assisted Defendant AmGUARD in the coverage investigation for the August Claim and inspected Plaintiffs' restaurant; and Dwayne Hyre, who investigated the February Claim on Defendant AmGUARD's behalf. (*Id.* at 5–6.)

In May 2026, Plaintiffs filed an *Ex Parte* Motion to Modify the Scheduling Order (*Ex Parte* Motion"), seeking to extend the fact discovery deadline by 60 days to enable Plaintiffs to depose Defendant AmGUARD employees Melinda Champluvier, Nona Loftus, and Christana Coury, and two of Defendant AmGUARD's former employees—Alex Wolfe and Read Walden. (ECF No. 29 at 7.) The Court granted the *Ex Parte* Motion and extended the deadline for the completion of fact discovery to August 7, 2026, "for the limited purpose of deposing only the witnesses identified in Plaintiffs' *Ex Parte* Motion, pending the Court's disposition of the parties' dispute regarding those depositions." (ECF No. 34.)

Also in May 2026, Defendant AmGUARD filed an *Ex Parte* Application for Protective Order Prohibiting the Depositions of Upper Management or, Alternatively, for Leave to File a Motion for Protective Order ("*Ex Parte* Application"), which Plaintiffs

opposed. (ECF Nos. 32, 33.) The Court granted, in limited part, and otherwise denied without prejudice the *Ex Parte* Application and granted Defendant AmGUARD leave to file a noticed motion for a protective order. (ECF No. 35.) On June 9, 2026, Defendant AmGUARD filed the instant Motion, which Plaintiffs opposed. (ECF Nos. 38, 39.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(c)(1) provides that

> [a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> **(A)** forbidding the disclosure or discovery;
> . . .
> **(D)** forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]

Fed. R. Civ. P. 26(c)(1).

On motion or *sua sponte*, courts "must limit the frequency or extent" of otherwise permissible discovery if it determines that

> **(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> **(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> **(iii)** the proposed discovery is outside the scope permitted by Rule 26(b)(1).[1]

Fed. R. Civ. P. 26(b)(2)(C).

The party seeking a protective order bears the burden of showing good cause. *In re Roman Catholic Archbishop of Portland Oregon*, 661 F.3d 417, 424 (9th Cir. 2011). This burden may be satisfied by "showing "that specific prejudice or harm will result if the protective order is not granted." (*Id.*) (internal quotations and citation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (citation omitted). If the Court determines that such harm will result, the Court must "balance the interests in allowing the discovery against the relative burdens to the parties and nonparties." *Lectrolarm Cust. Sys., Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 573 (E.D. Cal. 2002). The burden to obtain a protective order may also be satisfied by demonstrating that the requested discovery is irrelevant. *See* Fed. R. Civ. P.

---

[1] Rule 26(b)(1) provides that

> [u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

26(b)(2)(C)(iii); *Carrera v. First American Home Buyers Protection Co.*, No. 13cv1585-BAS (JLB), 2014 WL 3695403, at *1 (S.D. Cal. July 23, 2014).

"The court has wide discretion to determine what constitutes a showing of good cause and to fashion a protective order that provides the appropriate degree of protection." *Grano v. Sodexo Mgt., Inc.*, 335 F.R.D. 411, 414 (S.D. Cal. 2020) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)); *see also U.S. v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 368–69 (9th Cir. 1982) (explaining that "Rule 26(c) . . . was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b)."

**III. DISCUSSION**

**A. Meet and Confer Requirement**

Counsel for Plaintiffs attests that Defendant AmGUARD "made no good-faith effort to confer with Plaintiff's counsel before filing this Motion." (ECF No. 39-1 at 2, ¶ 2.) Plaintiffs therefore ask the Court to deny the Motion on the basis that Defendant AmGUARD "failed to satisfy the mandatory meet-and-confer requirement under Federal Rule of Civil Procedure 26(c)(1)." (ECF No. 39 at 6.)

Rule 26(c)(1) states that a motion for a protective order must include "a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). "The Court, however, has the discretion to decide a [discovery] motion . . . on the merits even if parties fail to meet and confer." *Reveal Chat Holdco, LLC v. Facebook, Inc.*, No. 20-CV-00363-BLF, 2020 WL 2843369, at *3 (N.D. Cal. Apr. 10, 2020) (granting defendant's motion to stay discovery notwithstanding the failure of the parties to first meet and confer pursuant to Rule 26(c)(1)). The Court elects to do so here and will proceed to consideration of the merits. *See id.*

///

///

///

**B. Depositions of Current Employees**

Defendant AmGUARD seeks a protective order shielding Ms. Champluvier, Ms. Loftus, and Ms. Coury from providing deposition testimony on the basis that they are "high-ranking officials subject to the apex doctrine." (ECF No. 38 at 7.)

"[C]ourts have recognized that permitting depositions of high-level executives (so-called 'apex' witnesses) with scant personal knowledge of the facts of a case 'creates a tremendous potential for abuse or harassment.'" *In re Mosaic LLM Litig.*, No. 24-CV-01451-CRB (LJC), 2025 WL 3080548, at *1 (N.D. Cal. Nov. 4, 2025) (quoting *In re Mosaic LLM Litig.*, No. 24-CV-01451-CRB (LJC), 2025 WL 3080548, at *1 (N.D. Cal. Nov. 4, 2025)). Thus, courts may exercise discretion under the federal rules to limit the taking of "apex" depositions. *Id.* The party opposing the deposition bears the burden of establishing that the witness is sufficiently high-ranking to merit "apex" doctrine protections. *BAE Sys. San Diego Ship Repair Inc. v. U.S.*, 670 F. Supp. 3d 1064, 1070 (S.D. Cal. 2023); *see also Apple Inc. v. Samsung Elecs, Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (the moving party carries the "burden to demonstrate that each 'apex' witness is so entitled to that designation"). "If this initial showing is met, courts then consider: (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case; and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Momtazee v. Fed. Ins. Co.*, No. 2:25-CV-03899-JLS-AJR, 2026 WL 1370123, at *3 (C.D. Cal. Apr. 14, 2026) (citation omitted). "[T]he closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex doctrine become." *Apple Inc.*, 282 F.R.D. at 263.

*1. Ms. Champluvier*

As noted above, the party opposing the deposition bears the burden of establishing that the witness is sufficiently high ranking to warrant "apex" doctrine protections. *See BAE Sys. San Diego Ship Repair Inc.*, 670 F. Supp. 3d at 1070. Defendant AmGUARD

offers the declaration of Ms. Champluvier, in which she attests that "as Property Claims Manager, [she] supervise[s] multiple teams of claim representatives and their team leaders/supervisors responsible for investigating various types of claims for insurance policy benefits due to property damage submitted to AmGUARD . . . pursuant to insurance policies issued by AmGUARD." (ECF No. 38-2 at 2, ¶ 2.) However, Defendant AmGUARD acknowledges that Ms. Champluvier is supervised by Ms. Loftus, who in turn is supervised by Ms. Coury. (ECF No. 38 at 7.) This chain of supervision suggests that Ms. Champluvier is not particularly close to the "apex of some particular peak in the corporate mountain range." *See Apple Inc.*, 282 F.R.D. at 263. The Court therefore concludes that Defendant AMGUARD fails to meet its burden of demonstrating that Ms. Champluvier is an "apex" witness. *Cf. BAE Sys. San Diego Ship Repair Inc.*, 670 F. Supp. 3d at 1070; *cf. LA Terminals, Inc. v. United Nat'l Ins. Co.*, 2022 WL 1637206, at *6 (C.D. Cal. Jan. 28, 2022) (holding that the senior vice president of claims for defendant's parent company, who functioned as the sole head of all insurance claims in the United States of America for the parent company's subsidiary insurance companies, qualified as an "apex" employee entitled to the protections of the apex deposition doctrine); *Ellena v. Standard Ins. Co.*, 2013 WL 4520200, at *1 (N.D. Cal. Aug. 23, 2013) (deeming an employee who held the title of Vice President of the Insurance Services Group subject to "apex" witness protection, where the employee reported directly to the CEO and was responsible for the strategy and management of several aspects of overall business).

The Court now considers whether Defendant AmGUARD has otherwise established good cause for the requested protective order. *See In re Bank of Am. California Unemployment Benefits Litig.*, No. 21MD2992-GPC(MSB), 2025 WL 1557598, at *4 (S.D. Cal. June 2, 2025), *reconsideration denied*, No. 21MD2992-GPC(MSB), 2025 WL 2617075 (S.D. Cal. Sept. 10, 2025) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Even when a party seeks a protective order barring an apex deposition, it retains the heavy burden to show good cause for a protective order." (internal quotation marks omitted)). Defendant AmGUARD contends that Ms. Champluvier "played no role

in the investigations of the February or August [Claims]" and that her decision to allow Mr. Heiser to adjust the claimed loss in excess of his monetary authority "ha[d] no bearing on the propriety of the coverage denial or reasonableness of Defendant's coverage investigation." (ECF No. 38 at 9.) Though concededly "aware" of both the February Claim and the August Claim, Ms. Champluvier insists that she "had no involvement" in the coverage investigation or determination regarding the February Claim. (ECF No. 38-2 at 2, ¶¶ 2, 3.) Ms. Champluvier attests that she "conferred with [Mr. Heiser] and attorney [Richard C.] Weston about the August [Claim] via e-mail on January 4, 2024 prior to the denial letter," and that she thereafter "participated in other email correspondence about the August Loss from January 29, 2024 through March 19, 2024 with attorney Weston, [Mr. Shaver], [Mr. Heiser,] and [Mr.] Walden (former Director of Claims for AmGUARD)." (*Id.* at 3, ¶ 5.) Ms. Champluvier maintains that she "had no involvement in AmGUARD's investigation of coverage for the August [Claim] outside of these communications involving counsel" and, further, that she does not "have unique, personal, firsthand knowledge concerning the August [Claim] other than information exchanged during [her] conferences involving attorney Weston." (*Id.*)

As Ms. Champluvier communicated with Mr. Heiser concerning the August Claim prior to issuance of the denial letter, she likely possesses information relevant to the handling of that claim. (ECF No. 38-2 at 3, ¶ 5.) Indeed, counsel for Plaintiffs attests that "[f]rom the depositions of Mr. Shaver and Mr. Heiser, it was discovered that Ms. Champluvier . . . not only supervised both Mr. Shaver and Mr. Heiser, but she also made the decision that Mr. Heiser could handle the August Claim even though it exceeded his authority limit of $250,000.00." (ECF No. 39-1 at 2, ¶ 6.) Further, Defendant AmGUARD's blanket statement that Ms. Champluvier's decision to allow Mr. Heiser to adjust the claimed loss in excess of his monetary authority "ha[d] no bearing on the propriety of the coverage denial or reasonableness of Defendant's coverage investigation" does not establish that the sought-after information is irrelevant or that any particular prejudice or harm would result if she were deposed. (ECF No. 38 at 9); *see Beckman*

*Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir.1992) (holding that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test").

Moreover, Ms. Champluvier maintains that any knowledge she has derives from privileged communications with counsel. (ECF No. 38-2 at 3, ¶ 5.) "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) (quoting *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020)). "Attorney-client privilege is 'narrowly and strictly construed,' and the party asserting it has the burden of proving that the privilege applies." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22-MD-03047-YGR (PHK), 2025 WL 325970, at *2 (N.D. Cal. Jan. 29, 2025) (quoting *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) (citations omitted)). "While "communications *about* facts that relate to potential legal liability may constitute legal advice," the law recognizes that "the underlying facts are not privileged." *Id.* at *5 (quoting *City of Roseville Emps. Ret. Sys. v. Apple Inc.*, No. 19-cv-02033-YGR (JCS), 2022 WL 3083000, at *14 (N.D. Cal. Aug. 3, 2022) (emphasis in original)). That Ms. Champluvier communicated with counsel concerning the August Claim does not prevent her from providing deposition testimony regarding underlying facts pertaining to that claim. *See Upjohn v. United States*, 449 U.S. 383, 396 (1981) (holding that a party "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney").

Thus, the Court finds that Defendant AmGUARD fails to establish cause for a protective order shielding Ms. Champluvier from providing deposition testimony. *See First United Methodist Church of San Jose v. Atl. Mut. Ins. Co.*, No. C-95-2243 DLJ, 1995 WL 566026, at *2 (N.D. Cal. Sept. 19, 1995) ("A strong showing is required before a party will be denied entirely the right to take a deposition." (quoting *Blankenship*, 519 F.2d at 429)); *see also WebSideStory, Inc. v. NetRatings, Inc.*, No. 06CV408 WQH(AJB), 2007

WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007) ("A party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied.") The Court therefore **DENIES** Defendant AmGUARD's Motion as to Ms. Champluvier.

*2. Ms. Loftus and Ms. Coury*

Defendant AmGUARD notes Mr. Heiser's testimony that Ms. Loftus supervised his direct supervisor, Mr. Walden, and that Ms. Loftus was, in turn, supervised by Ms. Coury. (ECF No. 38 at 7.) Ms. Champluvier attests on behalf of Defendant AmGUARD that Ms. Loftus

> is employed as Assistant Vice President of Claims by Berkshire Hathaway GUARD Insurance Companies. In that capacity, [Ms. Loftus] supervises and oversees, along with other Vice Presidents of Claims, the claim department responsible for investigating various types of claims for insurance policy benefits submitted to AmGUARD pursuant to insurance policies issued by AmGUARD.

(ECF No. 38-2 at 3, ¶ 6.) Regarding Ms. Coury, Ms. Champluvier attests that she

> is employed as Vice President of Claims by Berkshire Hathaway GUARD Insurance Companies. In that capacity, [Ms. Coury] supervises and oversees, along with other Vice Presidents of Claims, the claim department responsible for investigating various types of claims for insurance policy benefits submitted to AmGUARD pursuant to insurance policies issued by AmGUARD.

(*Id.* at 3–4, ¶ 7.)

Based upon this, the Court concludes that neither Ms. Loftus nor Ms. Coury are at the very apex of the corporate mountain range, but they both are closer to a peak—Ms. Coury more so than Ms. Loftus. *Momtazee*, 2026 WL 1370123, at *3 (citation omitted). "[T]he closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex

doctrine become." *Apple Inc.*, 282 F.R.D. at 263. The Court looks to balance the burden to the corporation and the executives against the importance of their testimony to the litigation.

Defendant AmGUARD asserts that Ms. Loftus's absence from Defendant's privilege log and claim file for the August Claim confirms that she "had no role in the investigation or coverage determination at issue." (ECF No. 38 at 8.) Ms. Champluvier attests on behalf of Defendant AmGUARD that Ms. Loftus and Ms. Coury

> had no involvement in AmGUARD's coverage investigation of the February Loss or August Loss. [They] did not consult with claim personnel assigned to investigate coverage for the February Loss or August Loss, direct said personnel to do or refrain from doing anything in relation to those losses or make any recommendations to said personnel about the coverage investigation of the February Loss or August Loss or AmGUARD's determinations of coverage related to those losses.

(ECF No. 38-2 at 3–4, ¶¶ 6–7.) Defendant AmGUARD's representations indicate that deposing Ms. Loftus and Ms. Coury would not uncover information relevant to the handling of the August Claim.

Further, whereas Plaintiffs established the relevance of the deposition testimony sought from Ms. Champluvier through her communications and decisions regarding the August Claim, Plaintiffs offer no such representations with respect to Ms. Loftus and Ms. Coury. Indeed, Plaintiffs' argument acknowledges the lack of established relevance to the testimony of Ms. Loftus and Ms. Coury. (*See* ECF No. 39 at 12 (Plaintiff's assertion that they "are entitled to explore [Ms. Loftus's] involvement and what, *if anything*, was escalated to them and why") (emphasis added).) Thus, the Court finds that the burden of these depositions would not be proportional to the needs of the case and Defendant AmGUARD has established good cause to enter a protective order shielding Ms. Loftus and Ms. Coury from providing deposition testimony. *See Ginena v. Alaska Airlines, Inc.*, No. 2:04-CV-01304-RCJ, 2011 WL 4749104, at *3 (D. Nev. Oct. 6, 2011) (holding that

defendant established good cause for issuance of a protective order precluding the deposition of an individual who did not possess information relevant to any pending claims, explaining that "[i]f discovery sought is not relevant, the court should restrict discovery by issuing a protective order"); *see also Carrera v. First Am. Home Buyers Prot. Co.*, No. 13CV1585-BAS JLB, 2014 WL 3695403, at *1 (S.D. Cal. July 23, 2014) (citing Fed.R.Civ.P. 26(b)(2)(C)(iii)) (explaining that the burden of establishing good cause to obtain a protective order "can be met by showing that the sought after discovery is irrelevant"); *Monte H. Greenawalt Revocable Trust v. Brown,* No. 12cv1983, 2013 WL 6844760, *3 (D. Nev. Dec.19, 2013) ("Discovery requests seeking irrelevant information are inherently undue and burdensome").

Based upon the respective representations of the parties, the Court concludes that the depositions of these two executive witnesses would be, at best, a fishing expedition and, at worst, harassment.

The Court therefore **GRANTS** the Motion as to Ms. Loftus and Ms. Coury.

**C. Depositions of Former Employees**

Rule 26(c)(1) requires courts to find good cause to issue a protective order, even when the subject of discovery is a nonparty. Fed. R. Civ. P. 26(c)(1). "While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a nonparty is the target of discovery." *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (internal citation omitted).

Here, Plaintiffs seek to depose Mr. Walden and Mr. Wolfe, two former employees of Defendant AmGUARD.[2] (ECF No. 38 at 10.) Mr. Walden was the direct supervisor of Mr. Heiser, who drafted the denial letter for the August Claim. (ECF No. 39 at 16.) Mr. Wolfe is a former adjuster who assisted Mr. Shaver with the August Claim. (ECF No. 38 at 10.) Defendant AmGUARD moves for a protective order prohibiting the

[2] An apparent typographical error, Plaintiffs repeatedly refer to Mr. Walden as "Mr. Waldon." (*See* ECF No. 39.)

depositions of both Mr. Walden and Mr. Wolfe. (*Id.*) The Court will evaluate each request in turn.

*1. Mr. Walden*

Defendant AmGUARD argues that Plaintiffs are not entitled to depose Mr. Walden, because as the supervisor of Mr. Heiser, he did not play a "direct role in the investigation or coverage determination for the August [Claim]." (ECF No. 38 at 11.) Additionally, Defendant AmGUARD argues that "Plaintiffs have identified no evidence that Walden possesses independent factual knowledge regarding the investigation, adjustment, or coverage analysis beyond information already obtained." (*Id.*) Finally, Defendant AmGUARD argues that the late timing of Plaintiffs' request to take Mr. Walden's deposition demonstrates its "cumulative and harassing nature," where Plaintiffs already pursued extensive discovery concerning the August Claim and Mr. Walden was identified in Defendant's privilege log served on December 23, 2025. (*Id.*)

Plaintiffs counter that Mr. Walden, as Mr. Heiser's direct supervisor, "is a critical link in the chain of supervision and decision making that led to the wrongful denial of Plaintiffs' August Claim." (ECF No. 39 at 16.) Plaintiffs contend that Defendant AmGUARD's privilege log indicates that Mr. Walden "was copied on and involved in communications during the very period surrounding the denial, communications that Defendant [AmGUARD] has entirely redacted and refused to produce on privilege grounds." (*Id.* at 16.) Plaintiffs seek information regarding "how and why" a claim exceeding Mr. Heiser's authority limit "was sent back down to Mr. Heiser to handle and issue a denial letter." (*Id.* at 17.) Further, Plaintiffs seek to depose Mr. Walden regarding "his supervisory decisions, his knowledge of the August Claim, what was communicated to him about the escalation, and what directives, if any, he issued regarding how the August Claim should be handled." (*Id.*) Plaintiffs maintain that Mr. Walden's testimony would be neither cumulative nor duplicative, as Mr. Heiser testified that he had a limited recollection of the substance of the escalation communications and did not know the reasons for the claim denial. (*Id.* at 16–17.) Moreover, Plaintiffs accuse Defendant

AmGUARD of "procedural gamesmanship" for refusing to provide the last known address and contact information for Mr. Walden on the basis that he is longer in Defendant AmGUARD's employ, thereby hindering Plaintiff's ability to subpoena him directly. (*Id.* at 18.)

Defendant AmGUARD's assertion that good cause exists to shield Mr. Walden from providing deposition testimony on the basis that he did not play a "direct role" the handling of the August claim turns primarily on the question of relevance. (ECF No. 38 at 11.) "'The compulsion of production of irrelevant information is an inherently undue burden' for which a protective order may issue." *Carrera v. First Am. Home Buyers Prot. Co.*, No. 13CV1585-BAS JLB, 2014 WL 3695403, at *1 (S.D. Cal. July 23, 2014) (quoting *Jimenez v. City of Chicago*, 733 F.Supp.2d 1268, 1273 (W.D. Wash. 2010)) (further citations omitted).

Ms. Van Ginneken attests in the supporting declaration accompanying Plaintiff's Opposition that "Mr. Heiser [] testified to 'triaging' the August Claim up to Ms. Champluvier to handle it as it exceeded his authority" and to having "no idea how Ms. Champluvier reached her determination to send the August Claim back to him." (ECF No. 39-1 at 3, ¶¶ 7, 10.) Although this testimony indicates that Ms. Champluvier, rather than Mr. Walden, may possess information relevant to the August claim, Mr. Walden is identified in Defendant AmGUARD's privilege log as one of several recipients, including Ms. Champluvier, of "[e]mails with coverage counsel *concerning [P]laintiff's subject insurance claim*." (ECF No. 38-1 at 32 (emphasis added); *see also id.* at 33.) As explained above, "[a] company cannot shield from discovery facts learned by an attorney in the course of an investigation because the attorney-client privilege protects communications, not facts." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22-MD-03047-YGR (PHK), 2025 WL 325970, at *5 (N.D. Cal. Jan. 29, 2025) (citation omitted).

As the supervisor to whom the August claim was escalated, Mr. Walden plausibly possesses relevant, noncumulative information about the substance of the escalatory

communications and the decisions he made regarding the handling of the August Claim. (ECF No. 39 at 17.) The Court is not persuaded by Defendant AmGUARD's argument that "the timing of Plaintiffs' desire to take these depositions further demonstrates their cumulative and harassing nature." To the contrary, "there is no basis for denying a discovery request simply because it is served toward the end of the designated period." *Trump*, 329 F.R.D. at 274. Moreover, Defendant AmGUARD has not identified any specific "annoyance, embarrassment, oppression, or undue burden or expense" that would befall Mr. Walden if a protective order were not granted. *See* Fed. R. Civ. P. 26(c)(1). Defendant AmGUARD made a generalized argument that "locat[ing], prepar[ing], and produc[ing]" Mr. Walden as a witness would be a burden. (ECF No. 38 at 12.) However, Defendant AmGUARD fails to articulate why the deposition of Mr. Walden would be uniquely burdensome or what "specific prejudice or harm" would ensue in the absence of a protective order. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002).

The Court therefore **DENIES** Defendant AmGUARD's Motion as to Mr. Walden.

*2. Mr. Wolfe*

Defendant AmGUARD argues that a protective order prohibiting the deposition of Mr. Wolfe is necessary, because Plaintiffs "already deposed Mr. Shaver, who[m] Mr. Wolfe assisted in adjusting the August Claim, and Mr. Heiser, who supervised both Mr. Shaver and Mr. Wolfe." (ECF No. 38 at 10.) Defendant AmGUARD contends that Plaintiffs have "not identified any information uniquely possessed by Wolfe that is not already available through those witnesses, the subject file claim, or the extensive discovery produced by Defendant." (*Id*. at 11.) Defendant AmGUARD also argues that the late timing of Plaintiffs' request to take Mr. Wolfe's deposition demonstrates its "cumulative and harassing nature." (*Id*.)

Plaintiffs assert that Mr. Wolfe's deposition is necessary to supplement the information provided by Mr. Shaver in his deposition. (ECF No. 39 at 17.) Plaintiffs note that Mr. Shaver demonstrated a "near-total inability to account for his handling of the

August Claim" during his deposition, responding "I'm not sure" over 300 times during his deposition and "I don't know" over 100 times. (*Id.* at 17–18.) Plaintiffs contend that Mr. Shaver's lack of recollection "underscores the need for further depositions of the adjusters that also handled the August Claim." (*Id.* at 18.) As with Mr. Walden, Plaintiffs accuse Defendant AmGUARD of "procedural gamesmanship" for refusing to provide the last known address and contact information for Mr. Wolfe on the basis that he is longer in Defendant AmGUARD's employ, thereby hindering Plaintiff's ability to subpoena him directly. (*Id.* at 18.)

The Court finds that Defendant AmGUARD fails to establish good cause for a protective order with respect to Mr. Wolfe. Mr. Wolfe was personally involved in adjusting the very claim at issue in this case. (ECF No. 38 at 10.) While Mr. Wolfe's knowledge about the August Claim may overlap with that of Mr. Shaver, the inability of Mr. Shaver to recall his handling of the August Claim renders Mr. Wolfe's testimony potentially significant.

The Court therefore **DENIES** Defendant AmGUARD's Motion as to Mr. Wolfe.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the Motion. The deadline for the completion of fact discovery is extended to September 25, 2026 for the limited purpose of permitting Plaintiffs to take the depositions of Ms. Champluvier, Mr. Walden, and Mr. Wolfe.

**IT IS SO ORDERED.**

Dated: August 27, 2026

Hon. Jill L. Burkhardt
United States Magistrate Judge